WRIGHT K. GANNETT et al., appellants, v. WAYNE G. COOK et al., defendant-appellees, and FRED J. KEPPY et al., intervenor-appellees.

No. 48379.

(Reported in 61 N.W.2d 703)

DECEMBER 15, 1953.

REHEARING DENIED APRIL 9, 1954.

Robert D. Wells, William W. Brubaker and Edward N. Wehr, all of Davenport, for appellants.

Charles G. Rehling, Scott County Attorney, for defendant-appellees.

Betty, Betty, Newman, Heninger & Van Der Kamp and Howard Eckerman, all of Davenport, for intervenor-appellees.

MULRONEY, J.—This is an appeal from a decision in a case arising under the county zoning law, or chapter 358A, Code, 1950. This law, which was enacted in 1947, has not been involved in any prior appeal to this court. Before stating the facts of this case we think it desirable to give a brief résumé of the law involved.

The county zoning law is a grant of power to the board of supervisors of any county of not less than 60,000 inhabitants, to adopt regulations or ordinances applicable to lands located within the county but lying outside the corporate limits of any city or town, restricting said areas as to industrial and commercial use and as to the buildings and structures that can be erected. Section 358A.3 provides that the county's restrictive regulations shall not "become effective until approved by a majority, in number and amount of assessment, of the resident real property taxpayers owning real property in the area or district in which such restriction is to be imposed, either (1) at an election held for that purpose, or (2) by their signing an appropriate document indicating their approval."

Other provisions of the act provide that the board shall appoint a zoning commission, to recommend the boundaries of the various districts and appropriate regulations and restrictions, and the board is required to hold public hearings on said recommendations. An administrative officer is to be appointed to enforce the ordinances (section 358A.9) and a Board of Adjustment is to be appointed (section 358A.10) which is to hear the petition of any property owner aggrieved by the action of the board of supervisors in the adoption of the regulations and restrictions.

It is further provided in section 358A.13 that "appeals to the board of adjustment may be taken by any person aggrieved

* * * by any decision of the administrative officer." Persons aggrieved by the decision of the board of adjustment may file a verified petition in a court of record setting forth that such decision is illegal in whole or in part and the court may allow a writ of certiorari directed to the board of adjustment (sections 358A.18 and 358A.19). The board's return shall set forth original or sworn copies of such portions of the record as called for by the writ and section 358A.20 provides "the return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from." Section 358A.21 provides the hearing in the court shall be de novo and the court may take evidence at this hearing or appoint a referee to take such evidence as it may direct and the court "may reverse or affirm, wholly or partly, or may modify the decision brought up for review", providing however no costs shall be allowed against the board unless "it shall appear to the court that it acted with gross negligence or in bad faith or with malice in making the decision appealed from."

Pursuant to the grant of power in the above county zoning law the Scott County Board of Supervisors in 1949 adopted a zoning ordinance which divided the county into various districts, and the residents in any particular district could adopt the type of zoning provided in the ordinance for that district by compliance with the provisions of (1) or (2) in section 358A.3 previously quoted. Section XXV of the ordinance provided as follows: "Such 'restrictions' shall be deemed in effect as of the time of filing a proper instrument in the office of the Recorder of Scott County showing such approval by the majority of said resident real property taxpayers in the manner provided by State law. For the purpose of this section the filing stamp of the Recorder on said instrument showing the time of filing shall be conclusive evidence as to the time of such filing."

The ordinance contained certain area and width restrictions but one section of the ordinance provided these restrictions would not apply to "any lot of record" at the time of the passage of the ordinance. There is no dispute in the facts in this case. On October 14, 1952, at 8:15 a.m., a plat of certain land located in School District No. 4 in Davenport Township (zoned as E-

rural in the ordinance) called Ridgeview Park was filed for record in the office of the recorder of Scott County, Iowa. The plat divided much of the area into lots 60' x 100' and 157' x 100'.

The record shows that Fred J. Keppy and Alta Keppy were the owners of all of the land in the platted area. The owners of the land in this school district had taken no action under the zoning ordinance and the record shows there were one hundred fifteen real property taxpayers in the district and the total assessment of the realty was $169,410. Ten minutes after the plat was filed for record, there was filed with the recorder an appropriate document of approval of the zoning ordinance bearing approximately ninety signatures of taxpayers owning property in the district of the assessed value of $131,922. No question is raised as to the sufficiency of this instrument to indicate the required approval of a majority in number and amount of assessment of the taxpayers owning real property in the school district.

The board of supervisors had appointed the county engineer as the administrative officer and on October 16 he received the application of the Anchor Homes Housing Development for building permits to be issued generally in the name of Mr. Keppy to build homes on the lots in the platted area. On October 20, 1952, the administrative officer granted the building permits and the residents in the school district who had signed the approval of zoning appealed to the Board of Adjustment. Hearing was had before the board and at this hearing the parties designated as intervenors here, who had a kindred interest in obtaining the building permits, were arrayed against those who had signed the instrument designated "Approval of Scott County Zoning." We will keep the designations of "signers" and "intervenors" and now state the issues between them. The building permits would allow the building of dwellings on land areas that were much smaller than allowed by the zoning ordinance so the permitted buildings on smaller lots in the platted area would violate the ordinance unless the lots were exempt from the restriction by being "lots of record" at the time of the passage of the ordinance.

The signers contended (1) the ordinance became effective

when the instrument of approval was signed by the requisite number—admittedly the day before it was filed for record—and (2) the plat did not constitute lots of record at the time of the passage of the zoning ordinance. The Board of Adjustment held against these contentions and the signers sought and obtained a writ of certiorari to the district court. No evidence was introduced in the district court and on January 23, 1953, the district court by its judgment and decree sustained the decision of the Board of Adjustment. The signers appeal, making the same contentions urged before the board, and we understand the intervenors are the appellees.

 I. The first contention of the signers that the zoning ordinance took effect when signed by the requisite number of residents is in effect an argument that the ordinance requirement in section XXV that the approval instrument would be "deemed in effect as of the time of filing * * * in the office of the Recorder" is in contravention of the state statute. The statute 358A.3, Code, 1950, is a prohibiting measure since it provides "no restriction * * * shall become effective until approved by a majority * * * by their signing an appropriate document indicating their approval." An ordinance that provides the approval instrument shall be both signed by the majority and filed for record before it becomes effective is not in contravention of the statute. It cannot be said the ordinance requiring majority signatures plus the filing for record before restrictions become effective is in conflict with the statute forbidding restrictions from becoming effective until there are majority signatures. The ordinance can make additional, reasonable and nondiscriminatory requirements so long as the statute does not prohibit the enlargement of the requirements stated in the statute.

 The general rule as stated in 62 C. J. S., Municipal Corporations, section 143, page 293, is: "* * * a municipal regulation which is merely additional to that of the state law does not create a conflict therewith. Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation may make such additional reasonable regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality. The fact that an ordinance enlarges

on the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirements for all cases to its own prescriptions." See also 37 Am. Jur., Municipal Corporations, section 165, and Western Pennsylvania Restaurant Assn. v. City of Pittsburgh, 366 Pa. 374, 77 A.2d 616.

■ Although a county is distinguishable from a municipal corporation, it is treated the same in such legislation as is here involved and the same rules that would govern the legislative authority of a municipal corporation under a zoning law would govern a county. The requirement of recordation was clearly not unreasonable. This was an instrument affecting real estate and it was important that the time of its going into effect be capable of exact determination.

■ II. The signers argue that even if the plat was recorded prior to the time when the zoning ordinance took effect the owners of the platted area, or purchasers of lots therein, would be subject to the restrictions of the zoning ordinance. The first argument is that no nonconforming use existed at the time the zoning ordinance became effective. The record shows no pre-existing nonconforming use, in the sense of actual construction, before the effective date of the zoning ordinance, but that is not the question here. This zoning ordinance contained what might be called an exemption or at least different restrictions for lots of record at the time of the passage of the ordinance.

Subparagraph 1 of paragraph 2 of section XII of the ordinance provides: "Any lot of record at the time of the passage of this Ordinance having less area or width than herein required may be used only for a single-family dwelling, or any of the nondwelling uses permitted in the district in which the lot is located."

The intervenors argue the above section of the ordinance applies to them and to their lots in the platted area. The signers argue the above section does not apply to intervenors for they were not owners of a "lot of record."

The ordinance contained a definition section. Section III states: "For the purpose of this Ordinance, certain terms and words are hereby defined" and paragraph 31 of said section III defines a "Lot of Record" as: "A lot or parcel of land, the deed

to which has been recorded in the office of the County Recorder of Scott County, Iowa, prior to the adoption of this ordinance."

The signers argue that under the above definition only lots of record, as shown by recorded *deeds,* not *plats,* are exempted from the area or width restrictions. The Adjustment Board in its written opinion (adopted in toto by the trial court) held there was "no sound reason for distinguishing between a plat and a deed to establish the status of a lot as 'a lot of record'." We see a very sound reason for distinguishing between a deed and plat when defining a "lot of record." The ordinance provides its own dictionary of terms, and that dictionary states a "lot of record" shall be a "deed * * * which has been recorded * * *." A plat is not a deed. A deed is a contract. As said in McDaniel v. Mace, 47 Iowa 509, "A plat is a subdivision of land into lots, streets and alleys, marked upon the earth and represented upon paper." When an owner plats his land and records the plat he implies that it has been surveyed and the survey marked on the ground so that the streets, blocks and lots can be identified. It might indicate the owner intends to devote his land to a different use. And some argument might be made that it is a deed of dedication when the plat is approved or accepted by some municipal authority authorized to accept the dedication of the described streets for public use. But that is unimportant here for the record does not show this plat was approved or accepted by any municipal authority. Evidently this was a platting for town purposes. A witness testifying for the intervenors testified they "intend to attempt to incorporate this project * * * into a town or city under the laws of the state of Iowa when it is finished." Not a lot in the platted area had been sold or deeded at the time the zoning ordinance went into effect. At that time the plat was nothing more than a pictured survey of lines marked upon land by the surveyor. The plat did not change the character, use or ownership of the land and at least until it was approved or accepted by some municipal authority, or lots sold, the owner could vacate and annul the plat.

There might be some force to intervenors' argument if the ordinance left the meaning of the term "lot of record" to popular understanding. But the ordinance provides its own glossary of

terms. As said by Mr. Justice Cardozo in Fox v. Standard Oil Co., 294 U. S. 87, 96, 55 S. Ct. 333, 337, 79 L. Ed. 780, 787:

"In such circumstances definition by the average man or even by the ordinary dictionary with its studied enumeration of subtle shades of meaning is not a substitute for the definition set before us by the lawmakers with instructions to apply it to the exclusion of all others [citation]. There would be little use in such a glossary if we were free in despite of it to choose a meaning for ourselves."

It may well be that the ordinary person would, as the Adjustment Board held, consider a plat of record as a lot of record. But when the ordinance supplied the definition of the term "lot of record" as a "deed * * * which has been recorded" we are not free to give it any other meaning. We hold the plat did not constitute a lot of record within the definition given by the ordinance as a "deed * * * which has been recorded" and the zoning restrictions as to area and width applied to the platted area.

III. The intervenors argue the zoning law and the ordinance enacted pursuant thereto are unconstitutional because the statute and ordinance (1) delegate legislative powers to the people (2) are an unreasonable exercise of police powers, and (3) violate the due process, equal protection, and privileges and immunities provisions of the United States and Iowa Constitutions.

The constitutional attack in intervenors' brief is in one division and we do not find the argument separated and pointed to specific sections of the Constitutions. In the main we find the argument to be that the statute and ordinance constitute a delegation of legislative power to the people and as such it amounts to an unreasonable exercise of police powers and violates other constitutional guaranties. There seems to be no separate argument that if there is no unconstitutional delegation, the zoning ordinance would still offend against the guaranties of our fundamental law. We feel the entire constitutional attack here made will be answered by deciding whether or not there is an unauthorized delegation of legislative power to the people.

With the exception of the consent provisions there is nothing in this ordinance which is distinguishable from other ordinances considered by other courts or the ordinance considered in City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N.W. 823, 188 N.W. 921, 23 A. L. R. 1322. And we do not need to consider the validity of the ordinance separate from the statute for the ordinance is in accord with the grant of authority in the statute and is only invalid if the statute is unconstitutional.

IV. The argument of intervenors is based upon the principles enunciated in Cusack Co. v. City of Chicago, 242 U. S. 526, 527, 531, 37 S. Ct. 190, 192, 61 L. Ed. 472, 474, 476, L. R. A. 1918A 136, Ann. Cas. 1917C 594, and Eubank v. City of Richmond, 226 U. S. 137, 141, 33 S. Ct. 76, 57 L. Ed. 156, 158, 42 L. R. A., N. S., 1123. These two cases are the leading decisions which are most frequently cited and discussed where courts are deciding questions of constitutionality of zoning ordinances and statutes that contain what is called "consent provisions." In the Eubank case the ordinance provided two thirds of the owners of the property abutting a street could request in writing that the Committee on Streets establish a building line, and, if so requested, the committee "shall establish such line * * *." The court held this ordinance unconstitutional. In the Cusack case the zoning ordinance banned an owner from erecting billboards " 'without first obtaining the consent in writing of the owners or duly authorized agents of said owners owning a majority of the frontage of the property on both sides of the street in the block in which such billboard * * * is to be erected.' " The court held this ordinance constitutional and distinguished the Eubank case by stating:

"A sufficient distinction between the ordinance there considered and the one at bar is plain. The former left the establishment of the building line untouched until the lot owners should act and then made the street committee the mere automatic register of that action and gave to it the effect of law. The ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification. The one ordinance per-

mits two thirds of the lot owners to impose restrictions upon the other property in the block, while the other permits one half of the lot owners to remove a restriction from the other property owners. This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances."

Intervenors cite many cases applying the rule of the above cases and argue this ordinance is like the ordinance in the Eubank case for it permits fifty-one per cent of the owners in the district to. establish the restrictions. Courts have frequently given expression to the rationale of these two cases. A statement that is often quoted is one found in Myers v. Fortunato, 12 Del. Ch. 374, 375, 110 A. 847, as follows:

■ "If the existence of the law depends upon the vote or act of the people it is an unconstitutional delegation of legislative power, but if the law is complete in and of itself the fact that it provides for the removal or modification of its prohibition by the act of those most affected thereby, does not make it a˙ delegation of legislative power."

See Du Pont v. Liquor Control Commission, 136 Conn.˙ 286, 71 A.2d 84, and cases cited therein. There is a sharp conflict in the authorities applying this rule, see note, 79´ L. Ed., page 533; 21 A. L. R.2d, page 553; Bassett on Zoning, page 43; Metzenbaum, The Law of Zoning, pages 275 to 277.

The question in the case at bar does not fall in either category mentioned in the foregoing rule. The existence of the zoning ordinance does not depend upon the vote or act of the people. It depends upon the vote of the board of supervisors. And there is no provision in the zoning ordinance for removal or modification of the restrictions of the law.

■■ This statute is in the nature of a local option law. A zoning statute is an exercise of the police power and when the legislature delegates zoning power to a municipality it can prescribe the conditions under which it shall be exercised. Marren v. Gamble, 237 N. C. 680, 75 S.E.2d 880. One of the conditions can well be that the execution of the law can be made to depend upon the consent of a majority of the people where

it is to operate. 16 C. J. S., Constitutional Law, sections 141 and 142; note 6 A. L. R. 218; People ex rel. Chicago Dryer Co. v. City of Chicago, 413 Ill. 315, 109 N.E.2d 201; State ex rel. Hilton v. City of Nashwauk, 151 Minn. 534, 186 N.W. 694; Thompson v. Tobacco Root Co-op. State Grazing District, 121 Mont. 445, 193 P.2d 811; Opinion of the Justices, 253 Ala. 111, 43 So.2d 3; City of Birmingham v. Norton, 255 Ala. 262, 50 So.2d 754; People v. Deatherage, 401 Ill. 25, 81 N.E.2d 581.

The general rule applicable here is stated in 16 C.J.S., Constitutional Law, section 142, as follows: "It is generally held, subject to some divergent opinion, that, although the legislature may not, in the absence of constitutional authorization, submit to the voters of the state the question of the adoption of a law, it may make the local application of a completely enacted general law subject to local approval or make the operation of a special local law dependent on approval of the voters of the territory in which the statute is to operate."

Again in the note in 6 A. L. R. at page 218, the note writer states: "It is, however, generally held that, where the statute is complete in itself, there is no unconstitutional delegation of power in making its operation dependent upon the vote or petition of the electors or freeholders of the district * * *."

In 2 McQuillin's Municipal Corporations, Third Ed., section 4.10, page 23, the rule is stated: "Generally it is held that a provision in a statute or in a municipal charter that it shall not take effect unless it is assented to by a majority or fixed percentage of the inhabitants of the municipality is not invalid as a delegation of legislative power, provided the statute is complete in itself."

In this case the ordinance prescribed by the statute is complete when passed by the board of supervisors. As stated in 16 C. J. S., Constitutional Law, section 141, page 415, it "lies dormant until called into active force by the existence of the conditions on which it is intended to operate." When the owners consented they merely exercised a right conferred by the law. Their action did not make a law. It merely related to the law's execution. The law can make the favorable action of the property owners the prerequisite to the execution of the law and such action does not make or change the law. As stated in

People ex rel. Chicago Dryer Co. v. City of Chicago, supra, at page 320 of 413 Ill., page 204 of 109 N.E.2d, "the ultimate operation of a law may by its own terms be made to depend upon a contingency, such as an affirmative vote of the electors in a given district. * * *."

In our Code may be found many laws of a local option nature where a complete law is set forth but the law is to take effect in some defined manner such as an election by the people. In Eckerson v. City of Des Moines, 137 Iowa 452, 478, 115 N.W. 177, 187, we stated: "If an act in question is complete in itself, and requires nothing further to give it validity as a legislative act, it is not vulnerable to attack on constitutional grounds simply because the limits of its operation are made to depend upon a vote of the people. And such is not only the doctrine of our own cases, but it accords with the great weight of authority [citing cases]."

We hold the statute and the ordinance adopted thereunder not subject to the constitutional objection of unlawful delegation of legislative power. The law and ordinance are each complete. Pursuant to the statutory authority, the ordinance made its application conditional upon the consent of the majority of landowners, in number and assessment, in the district. That consent could be expressed by vote or signed appropriate instrument. State ex rel. Hilton v. City of Nashwauk, supra. The consent which placed the law in operation has no relation to the enactment of the law and the consent clause does not render the ordinance vulnerable as a delegation of legislative power. The judgment of the trial court is reversed and the cause remanded for judgment for the signers in conformity with this opinion, with all costs to be taxed to the intervenors.—Reversed and remanded.

All Justices concur.