NORTHERN INDIANA PUBLIC SERVICE COMPANY *v.*
McCOY ET UX.

[No. 29,696. Filed March 24, 1959.]

302

*Lawyer, Friedrich, Petrie & Tweedle,* of Hamond, *Sammons & Sammons,* and *George F. Sammons,* of Kentland, for appellant.

*Chris J. Pappas, Pappas & Garrett, Charles K. Whitted, Strom & Whitted,* all of Gary and *John Barce,* of Kentland, for appellees.

BOBBITT, J.—Appellant, an Indiana public utility corporation, brought this action to appropriate a right-of-way for power line purposes across certain lands of appellees in Lake County, Indiana.

The appraisers in their report awarded damages in the amount of $1,650. To this report appellees filed written exceptions alleging the damages to be inadequate. A trial by jury was subsequently had, and a verdict returned assessing damages in the sum of $7,025. Judgment was rendered in the amount of the verdict, plus interest in the sum of $1,173.34.

The overruling of appellant's motion for a new trial is the sole error assigned. While 13 grounds or specifications therefor are assigned and discussed in the argument section of appellant's brief, we shall, because of the result reached, consider only those pertaining to the admission of certain evidence on the amount of damages.

Appellees' property here affected consists of 13 acres of level terrain, triangular in shape. The easement

sought by appellant consists of a strip 100 feet wide by parallel lines off the east side of the entire tract.

A subdivision, called "Independence Park," extending along the entire western boundary of the property herein was opened in 1939 and is now fully populated. This subdivision and appellees' property are separated by an open ditch which drains excess water and "probably sewage" that is first processed by septic tanks.

Immediately to the north and east of appellees' property lies the improved Brantwood Addition to the Town of Highland. The east boundary line of appellees' property is the dividing line between Munster and Highland. Immediately east is the unimproved subdivision of Melody Lane Gardens. The only access to appellees' property at the time of the trial herein was Martha Street. It is 40 feet wide, unimproved, runs east and west and connects to Highway No. 41.

Sometime in 1952 the property herein was rezoned from Class "A" to Class "B" residence, in contemplation of the preparation of a plan or plat to present to the Town Board of Munster for approval. This first plat was not approved, for reasons here immaterial, but later in the same year appellees' Exhibit No. 1 was prepared and allegedly approved by the Town Board of Munster. However, appellee-Robert F. McCoy testified, on cross-examination, that Exhibit No. 1 was a "tentative plat" and was never approved either by the Town Board or the Planning Commission of Munster.

Three other plats of appellees' tract of land were prepared after Exhibit No. 1, but it is not shown that any of them was ever regularly approved and recorded.

Further, on cross-examination, appellee-Robert F. McCoy testified as follows :

"Q. Was it ever recorded? [Appellees' Exhibit No. 1.]

"A. No, sir, it wasn't ever recorded.

"Q. So that today this ground is not platted ground, is it?

"A. No, it isn't.

"Q. It is acreage, isn't it?

"A. At the present time it is acreage, certainly it has to be acreage.

"Q. Well, it has been acreage all the time you have owned it, hasn't it been?

"A. That is right."

Appellee-Robert F. McCoy further testified that the value of lots taken by the condemnation for the easement sought by appellant was $15,000. He said, "Well, I put the value at $15,000, there was ten lots at $1500 each [lots numbered 28 through 37, inclusive, as shown on defendants-appellees' Exhibit No. 1] and ten times $1500 is $15,000."

William M. Shafer, a real estate appraiser, testified as a witness for appellees that "predicated on the subdivided land, the lots, not on acreage" appellees' property taken by appellant was, on October 15, 1953, worth $16,500.

Earl V. Smith, also a real estate appraiser, testified as a witness for appellees that based on the value of lots numbered 28 through 37, inclusive, as shown by Exhibit No. 1, at $30 a front foot, less certain deductions not here material, the net damages "to lots 28 to 37, inclusive and to Lot 1" was $19,750.

On cross-examination this witness testified that if the property were not platted into lots and not improved for residential purposes, his statement on direct exami-

nation as to damages would not have b'een the same, and that the amount of damages would have been less.

Three witnesses testified for appellant as to the amount of damages. All based their appraisal on the value of the land as acreage and not as lots as shown on defendants-appellees' Exhibit No. 1. One of these witnesses testified that the value of "the rights" taken was, on October 15, 1953, $1,000; another that the strip of ground covered by the easement was, on such date, worth $1,526; and the other that such strip had a fair market value at that time (October 15, 1953) of $2,205.

There is ample evidence from which the jury might have concluded that appellees' tract of land was best adapted to, and most available for, residential purposes. However, appellees' direct evidence as to value was all based upon the individual value of each lot as shown by the preliminary plat which was introduced in evidence as defendants-appellees' Exhibit No. 1.

There is no evidence that the lots as shown on the preliminary plat (Exhibit No. 1) were improved for residential use in any manner.

Appellant asserts that it was error to admit into evidence, over its timely objections, defendants-appellees' Exhibit No. 1 which is a "Preliminary Plat of proposed McCoy Addition to Munster," because it is not a proper plat to be used in relation to evidence which appellees sought to elicit from the witness for the reason that it does not bear the approval of the Town Board of Munster and does not show that it was ever recorded.

"Plats of subdivisions are by statute required to be recorded, §48-801, Burns' 1950 Replacement, Acts 1905, ch. 129, §246, p. 219; and approved by the board of public works, §48-802, Burns' 1950 Replacement, Acts 1905, ch. 129, §247,

p. 219. Plat books kept in the office of the county recorder are public records, *Miller* v. *The City of Indianapolis et al.* (1890), 123 Ind. 196, 24 N. E. 228; and the recording of a plat of a subdivision is notice to the world of the dedication of streets and alleys and of the restrictive covenants therein contained. *Backer* v. *Pyne et al.* (1892), 130 Ind 288, 30 N. E. 21, 30 Am. St. Rep. 231; *Keesling et al.* v. *Doyle* (1893), 8 Ind. App. 43, 35 N. E. 126; *Spencer Stone Co.* v. *Sedwick* (1915), 58 Ind. App. 64, 105 N. E. 525." *Wischmeyer* v. *Finch* (1952), 231 Ind. 282, 286, 107 N. E. 2d 661.

Until the plat of a subdivision is recorded as provided by §48-801, *supra*, no lots designated therein can be sold. The recording of the plat as provided by statute confirms the subdividing of the land in the manner and for the purposes shown by the plat, including notice of the dedication of all streets and alleys. Also, until the plat of a proposed subdivision is recorded there can be no assurance that there will not be changes in the size of lots, layouts of streets and alleys, restrictions and dedications, if any, or the use and purpose of the subdividing. The plat might be abandoned altogether, or several proposed plans for subdivision may be prepared as appellees have done in the case at bar. Until the plat is recorded as provided by statute, a prospective purchaser has no assurance that a subdivision will ever be established, and the lots and streets shown thereon are nothing more than lines on paper. The act of recording brings the subdivision into being and makes of it a reality instead of a mere outline on paper of a tentative proposal of the subdivider.

A plat is a division of land into lots, streets and alleys, represented on paper so they can be identified.

*Gannett* v. *Cook* (1953), 245 Iowa 750, 61 N. W. 2d 703, 707; *Thompson* v. *Hill* (1912), 137 Ga. 308, 73 S. E. 640, 643; 11 C. J. S., Boundaries, §4, p. 543. See also: *Chandler et al.* v. *The City of Kokomo et al.* (1894), 137 Ind. 295, 298, 36 N. E. 847.

Such a division of land does not become a legal subdivision in Indiana until the plat thereof has been recorded in compliance with the provisions of §48-801, *supra.* Cf: *Ernsperger* v. *City of Mishawaka* (1907), 168 Ind. 253, 256, 80 N. E. 543; *Wischmeyer* v. *Finch, supra* (1952), 231 Ind. 282, 107 N. E. 2d 661.

Since the plat constituting appellees' Exhibit No. 1 was not recorded as required by statute the land represented thereon is not a legal subdivision of the Town of Munster, and it must, therefore, be considered as unplatted land or acreage for the purpose of determining its value in an eminent domain proceeding such as that herein. It then follows that defendants-appellees' Exhibit No. 1 was not competent evidence to show the value of appellees' property or the amount of damages, if any, to which they were entitled.

The rule which governs here is ably stated in 4 Nichols on Eminent Domain, 3d Ed., §12.3142 [1], p. 107 as follows:

"It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush and boulders. The measure of compensation is not, however, the aggregate of the prices of the lots into which the tract could be best divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all the lots are disposed of cannot be ignored and is too uncertain and conjectural to be computed. The measure of compensa-

tion is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use."

Such rule is also stated in *Pennsylvania S. V. R. Co.* v. *Cleary* (1889), 125 Pa. 442, 17 Atl. 468, at page 470, 11 Am. St. Rep. 913, as follows:

"Equally improper is evidence showing how many building lots the tract under consideration could be divided into, and what such lots would be worth separately. It is proper to inquire what the tract is worth, having in view the purposes for which it is best adapted; but it is the tract, and not the lots into which it might be divided, that is to be valued."

The true value of the tract of land here in question on October 15, 1953, was not what it might be worth if subdivided and sold as improved lots, but rather what a purchaser would have been willing to pay for it in the condition in which it was on that date.

Appellees contend that Exhibit No. 1 was proper to show the most suitable use of their land and its adaptability to that use, and rely upon *The Ohio Valley Railway and Terminal Company* v. *Kerth* (1892), 130 Ind. 314, 30 N. E. 298, to support their position.

The Kerth Case was a proceeding by the appellant Railway Company to condemn a strip of appellee's land for right-of-way purposes. Such land was situated three-eighths of a mile from the corporate limits of the City of Evansville, and between appellee's land and the city limits lay a platted addition to the city.

Appellee-Kerth contended that his land was so situated that, in the ordinary growth of the City of Evansville, it would necessarily become a part of the residence portion of the city; that it was so situated and the quality of soil was such as to make it valuable to be

platted as a part of the city; and for the purpose of showing the adaptability of the land for the purpose of platting the same as an addition to the city appellee-Kerth offered in evidence a map which he had prepared, showing how the land would divide into lots of certain dimensions, and at what points and in what manner the streets of the city would extend through it. "It *was not contended that the land was platted, or that the appellee was entitled to recover for it as platted land,* but it was contended that one element of value that the tract of land had was its location in close proximity to a large and growing city, and its susceptibility to be platted and used as residence property made it more valuable than it otherwise would be." (Our emphasis.)

The map or plat was admitted solely for the purpose of showing the susceptibility of the tract of land to platting and its adaptability to residential purposes, as is evidenced by the court's instruction to the jury, as stated at page 318 of 130 Ind., as follows:

> " 'You should take the property and situation as it has been shown to be by the evidence at the time of the appropriation. In so far as any map or plat put in evidence in this cause by the plaintiff shows lots and streets laid off on plaintiff's land, you should not consider it, as it is conceded that no streets exist, and the ground has not been platted. In so far as said map or plat shows the size of the land, its form and shape and relation to other territory, you may consider it, and when it may show the actual condition of said land and the right of way and railroad, you may consider it.' "

This court there held that the jury had the right to take into consideration the value of the land to be platted as an addition to the City of Evansville, and that it was proper for the appellee to show its adaptability for that purpose, and that this

might be done by the use of a map or plat such as appellee-Kerth had prepared.

The Kerth Case lends no support to appellees' position because the record in the case at bar clearly discloses that the plat here in question (appellees' Exhibit No. 1) was introduced solely for the purpose of establishing the value of their land by computing the aggregate value of the lots as they might exist if the land were a legally constituted and presently existing subdivision of the Town of Munster, and not for the purpose of showing its most suitable use or its susceptibilty to platting as in the Kerth Case.

Appellees' position here is that their land is a platted subdivision of the Town of Munster. In the Kerth Case it was not contended that the tract of land was a platted subdivision, nor did the defendant-appellee there attempt to establish the value of land by showing the aggregate value of the lots as indicated on the map or plat introduced in evidence.

The plat or drawing introduced in evidence here as appellees' Exhibit No. 1 showing a proposed plan for subdividing the land in question into lots, did not *per se* change such land from acreage to platted lots in a legally established subdivision.

> For the foregoing reasons it was error for the trial court to admit defendants-appellees' Exhibit No. 1 into evidence.

Appellant further asserts that it was error to admit, over its timely objections, testimony of the witnesses, McCoy, Shafer and Smith, as to the value of appellees' property affected by the condemnation suit herein based upon the value of lots 28 through 37, inclusive, as shown by defendants-appellees' Exhibit

No. 1 for the reasons that the land taken was acreage and not certain lots in a regularly improved subdivision legally established. With this we agree.

Testimony by the witnesses McCoy, Shafer and Smith as to the value of appellees' property based upon the value of lots as shown by the preliminary plat, defendants-appellees' Exhibit No. 1, is based upon a false premise since, in fact, and as admitted by appellee-Robert F. McCoy, no such lots existed. The effect of such testimony is to give the jury a false sense of value of appellees' land resulting in the awarding of excessive and erroneous damages.

It was the duty of the jury here to determine the value of the tract of land taken, having in mind the purposes for which it was best adapted. They could not determine at what price lots might sell if the land were in a legally established subdivision.

The measure of damages here is the difference between the fair selling price of the tract of land, as acreage, before and after the entry and occupation by the appellant public utility. 11 Ind. Law Encyc., Vol. 2, Eminent Domain, §53, pp. 610, 611.

The jury could not determine this from the testimony of the three witnesses, McCoy, Shafer and Smith, who testified as to the value of the property solely upon the conjectured aggregate value of lots as shown by a preliminary plat or map which was incompetent and clearly inadmissible for the purpose for which it was admitted.

For these reasons it was error to admit the testimony of these three witnesses as to the value of the property involved.

Because of the result which we have reached and the unlikelihood that they will recur on a new trial, we deem it unnecessary to consider the other questions raised by appellant and discussed in the argument section of its brief.

Because of the errors above noted, the judgment of the trial court must be reversed.

Judgment reversed with instructions to the trial court to grant appellant's motion for a new trial.

Achor and Jackson, JJ., concur.

Landis, C. J., dissents with opinion.

Arterburn, J., dissents with opinion.

## DISSENTING OPINION

ARTERBURN, J.—The result of the decision seems to me to be that land will have one value the day before a plat is recorded and another value on the day after the plat is filed in the Recorder's office. I do not believe the mere recording of a plat can have such effect upon the values of unplatted land in such a short time. I think that the purpose for which unplatted land may be used may be shown in evidence as affecting its value. It follows that a proposed method of subdividing the land, as shown by any plat and how it can thus be most effectively subdivided to enhance its value, is a matter for the consideration of the jury, whether recorded or not. If we hold otherwise, it behooves every owner of unplatted land to get a plat on file at once and before someone institutes condemnation proceedings. The fact that a plat is recorded or not recorded does not alter the value of land and its prospective use as platted real estate. Such evidence is competent for the jury to consider with other facts in determining a "fair market

value." *Chandler et al.* v. *The City of Kokomo et al.* (1894), 137 Ind. 295, 36 N. E. 847; *The Ohio Valley Railway and Terminal Company* v. *Kerth* (1892), 130 Ind. 314, 30 N. E. 298.

## DISSENTING OPINION

LANDIS, C. J.—I cannot see how an unrecorded plat of real estate can be rendered inadmissible *per se* by a statute which simply requires that:

> "Any person who may lay off any town or . . . subdivision of . . . lots [therein] . . . shall, previous to the sale of any lots [therein] . . . cause to be recorded in the recorder's office . . . a correct plat of such town, . . . or subdivision, . . ."[1]

This is particularly true as to a plat offered by a defendant and in a condemnation suit such as the case at bar, as such a proceeding attempting to force an involuntary sale on a defendant could not be considered as a voluntary sale under the statute.

Had appellant (plaintiff below) contended the plat, if admitted, could only be considered by the jury for limited purposes, it should have offered instructions to such effect; for the authority is well settled that on failure to ask for instructions limiting evidence to its legitimate purpose, the question is waived. *The City of Delphi* v. *Lowery, Administratrix* (1881), 74 Ind. 520, 524, 39 Am. Rep. 98; *Indiana Union Traction Co.* v. *Pring* (1912), 50 Ind. App. 566, 580, 96 N. E. 180, 185.

NOTE.—Reported in 157 N. E. 2d 181.

---

1. Burn's Indiana Statutes §48-801, 1950 Replacement, being Acts of 1905, ch. 129, §246, p. 219. It should be noted that Burns' §48-803, 1950 Replacement, being Acts of 1905, ch. 129, §248, p. 219, is not here applicable.