METROPOLITAN PLAN COMMISSION OF MARION COUNTY *v.* STATE EX REL. MEYER ET AL.

[No. 30,040. Filed May 21, 1962.]

William B. Patrick and Joan R. Caldwell, both of Indianapolis, for appellant.

William F. LeMond and Eugene M. Fife, Jr., both of Indianapolis, for appellees, Roy C. Meyer and Glenna Meyer.

BOBBITT, J.—Appellees, Roy C. Meyer and Glenna Meyer, hereinafter referred to as "appellees-Meyer," brought an action for mandate against appellant and appellee-Harold Wiggins, as improvement location

permit clerk of the Marion County Board of Zoning Appeals, and appellee-C. Ray Fisher, as Marion County Building Commissioner, to compel the issuance of improvement location permits required by an applicable zoning ordinance for certain lots in a purported subdivision in Marion County, Indiana, known as Glenroy Village, Third Section.

The trial court issued a mandate, and from such action this appeal is prosecuted.

On November 3, 1955, a proposed plat of Glenroy Village, Third Section, was approved by the Marion County Plan Commission, pursuant to ch. 174, Acts of 1947, §53-701, *et seq.*, Burns' 1951 Replacement, as amended, and it was recorded in the Marion County Recorder's office on April 28, 1959, bearing the seal and approval of the Marion County Plan Commission, but without the approval and certification of the Metropolitan Plan Commission.

Appellant asserts that the recording of the plat is without legal effect because it does not bear the seal and approval of the Metropolitan Plan Commission as required by Acts of 1955, ch. 283, §53, p. 786; while appellees-Meyer assert that the approval of the Marion County Plan Commission on November 3, 1955, which was the regulatory body for the approval of plats at that time, was sufficient to effect a valid recording of the plat on April 28, 1959.

Chapter 283 of the Acts of 1955, effective June 30, 1955, established a single planning and zoning authority in counties containing first class cities. Marion County falls within the purview of this Act.

The purpose of this Act, as declared by the Legislature, is to meet the problems "created by expanding urbanization" by the unification of the planning

and zoning functions which are necessary "if the health, safety, morals, economic development and general welfare of the area is to be insured." Section 1, ch. 283, *supra.*

Section 85 of the Act (ch. 283, *supra*) provides that the Metropolitan Plan Commission, in order to effect the consolidation of the various plans and ordinances then in force in the county and in the cities into one comprehensive plan ordinance, shall adopt the existing master plans as its first comprehensive plan, and shall recommend "to the county council without amendment the adoption of the zoning, subdivision control, thoroughfare, and other ordinances relating to the jurisdiction of the department."

This section further provides that after the adoption of such plans and ordinances, the then existing county plan commission and the city plan commissions shall exercise no authority under any law pertaining to planning and zoning.

On March 28, 1957, the Marion County Council adopted all existing zoning and subdivision control ordinances within the county, and a certified copy of the adopting ordinance was subsequently filed on September 30, 1958, and recorded in the office of the Recorder of Marion County.

On November 3, 1958, the Marion County Council, pursuant to §48 of ch. 283, *supra,* adopted a new Subdivision Control Ordinance containing provisions for subdivision control and the approval of plats and re-plats. This ordinance established uniform standards for the platting and subdividing of land within the various political units in the county, and further provided "[n]o plat of a subdivision of land within the territorial limits of Marion County, Indiana, shall be recorded in the Marion County Recorder's office

until it has been approved by the Metropolitan Plan Commission of Marion County, Indiana, in accordance with the requirements, standards and specifications" as set out in the ordinance. Section 1.01, Subdivision Control Ordinance of Marion County, Indiana, adopted November 3, 1958:

A certified copy of this ordinance was filed in the office of the Recorder of Marion County on December 1, 1958.

Acts of 1955, ch. 283, Sec. 54, provides that,

> "After an ordinance containing provisions for subdivision control and approval of plats and re-plats has been adopted and a certified copy of the ordinance has been filed with the county recorder, the commission [Metropolitan Plan Commission of Marion County] shall have exclusive control over the approval of plats and re-plats."

Since such an ordinance was passed prior to the date on which appellees-Meyer recorded their plat of Glenroy Village, Third Section, were they required to have such plat certified and approved by the Metropolitan Plan Commission in order to give it legal effect? In our judgment they were.

It is true, as appellees-Meyer contend, that on November 3, 1955, the Marion County Plan Commission had exclusive control over the approval of plats of land within its jurisdiction. However, to effectuate the establishment of a subdivision requires more than the approval and certification of a plat by the proper zoning or planning authority.

Until a plat of a proposed subdivision is properly recorded, there is no assurance that the subdivision will ever be established. The act of recording brings the subdivision into being and makes of it a reality instead of a mere outline on

paper of the tentative proposal of the subdivider, and in Indiana a proposed division of land does not become a legal subdivision until it has been recorded in compliance with the provisions of the statutes pertaining to the establishment of subdivisions of lots and lands. *Northern Ind. Pub. Serv. Co.* v. *McCoy et ux.* (1959), 239 Ind. 301, 308, 157 N. E. 2d 181.

At the time (November 3, 1955) appellees-Meyer presented the plat of the proposed subdivision herein to the Marion County Plan Commission they were governed not only by the provisions of §§45 to 52, inclusive, of ch. 174 of the Acts of 1947, as amended, being §§53-745 to 53-749, inclusive, Burns' 1951 Replacement, and §§53-750 to 53-752, inclusive, Burns' 1961 Cum. Supp., which provide, *inter alia,* for the approval of plats by the Marion County Plan Commission, but also by §246 of ch. 129 of the Acts of 1905, which provides that a plat of any subdivision shall be recorded in the recorder's office of the proper county.

Assuming, but not deciding, that appellees-Meyer fully complied with the provisions of the Acts of 1947, ch. 174, *supra,* they did not attempt to comply with the provisions of the Acts of 1905, ch. 129, *supra,* and record their plat until April 28, 1959. During the period from November 3, 1955, until the plat is properly recorded, the proposed subdivision herein can have no legal status as such.

Appellees-Meyer, during this period, could have changed the size of the lots, layout of streets and alleys, restrictions and dedications, if any, the use and purpose of the subdividing or the plat could have been abandoned altogether. Until the plat of Glenroy Village, Third Section, was properly recorded it was in law no more than a division of

land into lots, streets and alleys, represented on paper so they could be identified. There was no legal dedication of the streets and alleys, prior to a recording of the plat. *Northern Ind. Pub. Serv. Co.* v. *McCoy et ux., supra* (1959), 239 Ind. 301, 307, 157 N. E. 2d 181.

Subsequent to the submission of the plat herein to the Marion County Plan Commission pursuant to the provisions of the Acts of 1947, ch. 147, and prior to April 28, 1959, the provisions of §53 of the Acts of 1955 became effective and applicable to the plat here in issue, by the adoption of ordinances containing provisions for subdivision control and approval of plats and re-plats and the filing thereof with the recorder of Marion County on December 1, 1958.

The change in procedure for the recording of plats in Marion County was initiated by the adoption, on November 3, 1958, of a subdivision control ordinance pursuant to Acts 1955, ch. 283, §48, *supra*, as hereinabove mentioned.

Section 50 of the 1947 Zoning Act, as amended by Acts 1953, ch. 97, §1, p. 277, being §53-750, Burns' 1961 Cum. Supp., provides that,

> "After a master plan and an ordinance containing provisions for subdivision control and the approval of plats and re-plats have been adopted and a certified copy of the ordinance has been filed with the county recorder, the filing and recording of a plat involving lands covered by such master plan and ordinance shall be without legal effect unless approved by the commission."

On November 5, 1955, the Marion County Plan Commission was the commission having jurisdiction, however, appellees-Meyer did not choose to record their plat while this commission still retained jurisdiction, and did not present it for recording until

after the Legislature and the Marion County Council, pursuant to authority delegated to it by the Legislature, had designated and established the Metropolitan Plan Commission as the commission without whose approval a recorded plat would be without legal effect.

After the adoption of the zoning and subdivision regulation ordinances, pursuant to the 1955 Act for the planning and zoning of metropolitan areas, it was essential to the purpose of the Act that the Metropolitan Plan Commission have complete control over the approval of all subdivisions and plats thereof, recorded after the adoption of the related ordinances. Otherwise, there could be no uniformity in any zoning plan, and the entire purpose of the Metropolitan Zoning Act and the ordinances adopted thereunder would be defeated.

There were two steps necessary to the establishment of the subdivision herein: (1) the approval of the plat involving the land covered by the authority having jursidiction to approve subdivisions, plats and re-plats; and (2) the recording of the plat pursuant to the requirements provided by statute for effectuating the validity of plats of lots and lands.

Appellees-Meyer completed the first step required by submitting the plat to the commission then having jurisdiction to approve plats, and pursuant to the statutes then in force. However, they did not fully consummate the lawful establishment of the subdivision at that time because they did not take the second necessary step and record the plat. Rather, they did not attempt to complete the second necessary step, i.e., present the plat to be recorded—until after the Legislature had changed the commis-

sion whose approval was necessary to the valid recording of a plat.

Section 53 of ch. 283, *supra*, was in full force and effect at the time appellees-Meyer decided to complete the establishment of the subdivision herein, and under this section of the statute and §1.01 of the Subdivision Control Ordinance, *supra*, the Metropolitan Plan Commission was the only authority whose approval could give legal effect to the recording of a plat of lots or lands.

In our judgment, to require the approval of the Metropolitan Plan Commission of the plat herein would not make the provisions of the Act of 1955 retroactive, as contended by appellees.

The recording of the plat herein is related to the zoning regulations and requirements for the establishment of subdivisions only in that it must first be approved by the proper zoning authority, pursuant to Acts 1955, ch. 283, §53, p. 798.

The purpose of the recording of a plat is to invoke and establish the legality of the subdivision which it describes.

For the foregoing reasons the recording of the plat for Glenroy Village, Third Section, was without legal effect, and the trial court erred in mandating the issuance of building or location permits for lots situated in such subdivision.

Because of the result which we have reached, it is unnecessary to decide the legality of the approval of the plat by the Marion County Plan Commission on November 3, 1955.

Judgment reversed with instructions to sustain appellant's motion for a new trial.

Achor, C. J., and Jackson, J., concurs.

Landis, J., concurs with opinion in which Arterburn, J., concurs.

### Concurring Opinion

LANDIS, J.—I concur in the majority opinion except in so far as it approves the majority opinion in *Northern Ind. Pub. Serv. Co.* v. *McCoy et ux.* (1959), 239 Ind. 301, 157 N. E. 2d 181, which involved the question of extending the recording statute to involuntary sales such as condemnation proceedings. See the dissenting opinions written thereto.

Arterburn, J., concurs.

NOTE.—Reported in 182 N. E. 2d 786, 790.