649 S.E.2d 164

David NEAL, Appellant,

v.

Don H. BROWN and South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management, Respondents.

No. 4275.

Court of Appeals of South Carolina.

July 13, 2007.

Heard Oct. 10, 2006.

Decided July 13, 2007.

Rehearing Denied Aug. 24, 2007.

Michael A. Molony and Lea B. Kerrison, of Charleston, for Appellant.

Andrew K. Epting, Jr., Clayton B. McCullough, and Leslie S. Riley, of Charleston, for Respondents.

BEATTY, J.

This appeal arises out of David Neal's second permit application for a dock. Neal appeals the circuit court's order affirming the Office of Ocean and Coastal Resource Management's (OCRM's) Coastal Zone Management Appellate Panel's (Appellate Panel's) decision that had the effect of denying him the dock permit. We reverse.

## FACTS

In 1997, three adjacent parcels of land, located at 111 Hibben Street (the property), in Mount Pleasant, were conveyed to Neal Brothers, Inc., a company in which Neal was a part owner. The three parcels had all been owned by the McIver family since 1930. The property had a five foot wide by one hundred and nineteen foot long strip connecting the inland property to Charleston Harbor. Neal had the property surveyed as required by his title insurance company prior to purchase. The survey, which indicated the three parcels were one lot, was recorded at the Charleston County Register of Mesne Conveyances on September 10, 1997. Shortly after it was recorded, Neal Brothers transferred title of the property to Tompkins and Company, LLC (Tompkins).[1]

In 1998, Neal first applied for a critical area permit to build a dock off of the property's five feet of waterfront access. OCRM denied the first application stating: "Your dock is proposed to extend from a 5' wide access path. This lot was

---

1. Neal is a controlling member and agent of Tompkins.

apparently replatted in February, 1997 as a combination of 3 lots. As such, this lot does not meet the minimum lot width standard in order to qualify for a single family dock." Neal initially appealed the denial, but the appeal was dismissed without prejudice after an agreement with OCRM that allowed Neal to reapply for a permit.

In September 1999, Amy Willis, the property owner adjacent to the property, filed suit against Neal and Tompkins, claiming ownership of the five feet by one hundred and nineteen feet strip of land extending from the property to Charleston Harbor. The disputed property included Tompkins' five feet of waterfront access. The trial court examined both chains of title, moved the property line nine inches, but otherwise determined the property in question belonged to Tompkins in fee simple absolute.

In June 2001, Neal applied a second time for a critical area permit to build a dock off of the five feet of waterfront access. At the time Neal applied for the second dock permit, the regulation controlling dock permits provided:

> For lots platted and recorded after May 23, 1993, before a dock will be permitted, a lot must have 75 feet of water frontage along the marsh edge and at least 75 feet of frontage between extended property lines.... Lots less than 50 feet wide are not eligible for a dock.[2]

23A S.C.Code Ann. Regs. 30–12(A)(2)(o) (Supp.2001). OCRM granted the permit application despite much public opposition, including from property owners adjacent to Neal. One of those adjacent owners, Don Brown, appealed the issuance of the permit to the administrative law court (ALC), arguing the property was not platted and recorded in its current form until 1997, and therefore, it must comply with regulation 30–12(A)(2)(o) (the regulation).

A hearing was held before the ALC. Neal's neighbors, Brown and Willis, testified regarding their opposition to the

---

**2.** The regulation has been amended several times. The relevant part of the regulation currently reads, "This section applies to lots subdivided or resubdivided after May 23, 1993 .... (i) To be eligible for a private, community or commercial dock, a lot must have: (a) 75 feet of frontage at the marsh edge, and ... (iii) Lots less than 50 feet wide are not eligible for a dock." 23A S.C.Code Ann. Regs. 30–12(A)(1)(o) (Supp. 2006).

dock. In addition to his own testimony, Neal presented the testimony of Richard Chinnis, the Director of Regulatory Programs at OCRM. Chinnis testified that he drafted the regulation that was adopted by the General Assembly. Chinnis stated that he was incorrect in his initial belief that the property had been "resubdivided" when he denied Neal's first application for a permit to build a dock. Chinnis also testified that OCRM interpreted the regulation as applying to lots subdivided into smaller lots after the effective date. Because the property had existed in its present form since the early 1900's, with no "resubdivision," Chinnis testified that OCRM determined that the regulation did not apply to the property and granted Neal's second application for a dock permit. When asked by the ALC to specifically define how he interpreted "platted and recorded" in evaluating Neal's permit application, Chinnis stated:

> The wording in the court case ... the basis that his lot had existed in its present form. When somebody buys a ... every time I've bought a house, the lots had to be replatted. The lot wasn't recreated as a new lot, it was just replatted as a result of some financial arrangement or final recording. Mr. Neal's lot obviously was platted after '97, but it was the same lot that had existed for 30, 40, 50 years. So it wasn't a new lot, it was created and originally platted and recorded.

The ALC agreed with OCRM's interpretation of the regulation. Looking to *Dorman v. Department of Health and Environmental Control*, 350 S.C. 159, 565 S.E.2d 119 (Ct.App. 2002),[3] the ALC found the regulation would only prohibit docks from properties with less than seventy-five feet of water frontage, or prohibit shared docks from properties with less than fifty feet of water frontage, if the property was platted and recorded after the effective date, May 23, 1993. The ALC further determined that the regulation applied to properties platted and recorded after May 23, 1993, only as a result of a subdivision of property. The ALC reasoned that "[t]he term

---

3. In *Dorman,* this court found the regulation only barred docks at properties that were less than seventy-five feet and less than fifty feet wide where the lots were platted and recorded after May 23, 1993. *Dorman,* 350 S.C. at 167, 565 S.E.2d at 123 ("By its clear terms, this subsection is inapplicable to this lot and does not prohibit the issuance of a dock permit in this case.").

'platted and recorded' assumes the platting and recording involves a change in the configuration of the property." The ALC concluded "[t]o assume otherwise would lead to an absurd result" because when property owners, who had owned property in the same configuration for many years, recorded or rerecorded a plat of their property at any time after May 23, 1993, they would be subject to the seventy-five feet requirement. The ALC also determined if the regulation applied to any platting and recording, it would prevent the construction of a dock for a purchaser of a lot that formerly qualified for a dock because a survey and plat are normally required for title insurance at the time of purchase. The ALC further found that if a lot was recorded prior to May 23, 1993, even if it was never platted before the date, the regulation would not apply. Finally, the ALC noted that the construction of a small dock from Neal's property would not detrimentally affect the neighbors' property values or use and enjoyment of their own property in violation of regulation 30–11(B)(10).[4] Accordingly, the ALC affirmed OCRM's issuance of the permit because the regulation did not apply to the property.

Brown appealed the ALC's ruling to the Appellate Panel. The Appellate Panel correctly described its scope of review and determined the ALC erred in its "interpretation of [the regulation] by concluding that 75 feet of frontage was not required in order for [Neal] to receive a private recreational dock permit" and reversed the ALC's order. The Appellate Panel's order did not contain any findings of fact.

Neal then appealed the Appellate Panel's ruling to the circuit court, which affirmed. The circuit court found the property had been platted and recorded more than one time after May 23, 1993; therefore, the regulation applied to the property and a new dock was impermissible because the property's waterfront footage was less than both the seventy-five foot and fifty foot requirements. The court found that the Neal property could not enjoy "grandfathered" status with regard to the regulation. Finally, the court found a dock

---

4. This section requires general consideration by the OCRM of how any project would potentially affect the value and enjoyment by neighboring property owners in a critical area. 23A S.C.Code Ann. Regs. 30–11(B)(10) (Supp.2006).

would interfere with neighbors' value, use, and enjoyment of their property. Neal filed a motion for reconsideration claiming the circuit court impermissibly made findings of fact. The circuit court denied the motion for reconsideration and issued a new order reiterating its decision and declaring that its previous order did not include findings of fact. This appeal followed.

## STANDARD OF REVIEW

In contested permitting cases, the ALC serves as the finder of fact. S.C.Code Ann. § 1–23–600(B) (Supp.2006); *Brown v. South Carolina Dep't of Health & Envtl. Control,* 348 S.C. 507, 520, 560 S.E.2d 410, 417 (2002); *Dorman,* 350 S.C. at 164, 565 S.E.2d at 122. On appeal to the Appellate Panel, the standard of review is whether the ALC's findings are supported by substantial evidence pursuant to section 1–23–610(C) of the South Carolina Code (Supp.2006). S.C.Code Ann. § 1–23–610(C) (Supp.2006); *DuRant v. South Carolina Dep't of Health & Envtl. Control,* 361 S.C. 416, 420, 604 S.E.2d 704, 706 (Ct.App.2004), *cert. denied* (Feb. 15, 2006). Thus, the Appellate Panel can reverse the ALC if the findings are not supported by substantial evidence or are based on an error of law. *Dorman,* 350 S.C. at 165, 565 S.E.2d at 122. The ALC's findings are supported by substantial evidence if, looking at the record as a whole, there is evidence from which reasonable minds could reach the same conclusion the administrative agency reached. *Grant v. South Carolina Coastal Council,* 319 S.C. 348, 353, 461 S.E.2d 388, 391 (1995).

Judicial review of the Appellate Panel's decision to the circuit court is governed by section 1–23–380(A)(6) of the South Carolina Code (2005), which provides:

The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C.Code ·Ann. § 1–23–380(A)(6) (2005).[5] This section also governs our review of the circuit court's decision. *South Carolina Coastal Conservation League v. South Carolina Dep't of Health Envtl. Control*, 363 S.C. 67, 73, 610 S.E.2d 482, 485 (2005); *Brown*, 348 S.C. at 512, 560 S.E.2d at 413.

## LAW/ANALYSIS

### I. Application of the Regulation

Neal argues the ALC correctly found that the regulation, and thus the width limitations for a dock, do not apply to the property because the property was not "platted and recorded" after May 23, 1993. Thus, he asserts, the circuit court erred in affirming the Appellate Panel's reversal of the ALC's decision. We agree.

■ Generally, "[c]ourts defer to the relevant administrative agency's decisions with respect to its own regulations unless there is a compelling reason to differ." *South Carolina Coastal Conservation League*, 363 S.C. at 75, 610 S.E.2d at 486; *see Dunton v. South Carolina Bd. of Exam'rs in Optometry*, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987) ("The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons."); *Dorman*, 350 S.C. at 167, 565 S.E.2d at 123–24 (finding the portion of the Appellate Panel's order construing its regulation was proper).

---

5. This section was amended, effective July 1, 2006, to provide for an appeal from the Appellate Panel directly to this court. S.C.Code Ann. § 1–23–380(A)(1) (Supp.2006). The amended section also renumbered the language of prior section 1–23–380(A)(6) (2005) to section 1–23–380(A)(5) (Supp.2006). However, the underlying appeal proceeded under the prior version of this section from the Appellate Panel to the circuit court and then to this court. Thus, the judicial review is controlled by the prior version, section 1–23–380(A)(6) (2005).

 If a statute's terms are clear, the court must apply the terms according to their literal meaning. *Brown v. South Carolina Dep't of Health Envtl. Control,* 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002). "An appellate court cannot construe a statute without regard to its plain meaning and may not resort to a forced interpretation in an attempt to expand or limit the scope of a statute." *Id.* While the appellate court usually defers to the Appellate Panel's construction of its own regulation, where the Appellate Panel's interpretation is contrary to the plain language of the regulation, the court will reject its interpretation. *Id.* at 515, 560 S.E.2d at 414.

 Nevertheless, "[a]ll rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, **and that language must be construed in light of the intended purpose of the statute.**" *Ray Bell Constr. Co. v. Sch. Dist. of Greenville County,* 331 S.C. 19, 26, 501 S.E.2d 725, 729 (1998)(emphasis in original). "However plain the ordinary meaning of the words used in a statute may, be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature...." *Id.* "If possible, the court will construe the statute so as to escape the absurdity and carry the intention into effect." *Id.*

The central question in this case is whether the property was "platted and recorded" prior to May 23, 1993. However, the terms "plat" and "survey" are used interchangeably throughout this record.[6] Thus, before determining the issues at hand, we take this opportunity to distinguish the terms. Generally, a "survey" is the process of determining the actual boundaries of a particular piece of property. *Black's Law Dictionary* 1445 (6th ed.1990). A "survey" can also be the result of a determination of boundary lines of a particular piece of property reduced to writing, such as in a map. *Id.; see Overstreet v. Dixon,* 107 Ga.App. 835, 131 S.E.2d 580, 583

---

**6.** One witness at the hearing before the ALC, real estate attorney Kenneth C. Krawcheck, was asked if there was a difference between the terms. He replied: "Practically, not very much. They look identical. A survey could be said to be any drawing of a piece of property, whereas a plat is a document intended for recordation or actually recorded. But the terms are used somewhat interchangeable."

(1963) (holding that a survey is the process by which a parcel of land is measured and its contents ascertained and is also a statement of or a paper showing the result of the survey with the courses and distances and quantity of the land).

A "plat," on the other hand, is generally a map of a piece of property or a plan of more than one piece of property as laid out in a subdivision and with reference to lots, streets, and block numbers. *Black's Law Dictionary* 1151 (6th ed.1990) (defining "plat" as a "map of a specific land area such as a town, section, or subdivision showing the location and boundaries of individual parcels of land subdivided into lots, with streets, alleys, easements, etc., usually drawn to scale"). Although not specifically defined as such in this state, many jurisdictions have defined "plat" as a document signifying the subdivision of property or the dedication of property for a particular use. *See Sellon v. City of Manitou Springs*, 745 P.2d 229, 234 (Colo.1987) (holding that the term "plat" as used in a zoning ordinance referred to a subdivision map); *N. Indiana Pub. Serv. Co. v. McCoy*, 239 Ind. 301, 157 N.E.2d 181, 184 (1959) (holding that a plat is a division of land into lots, streets, and alleys by means of a representation on paper so that they can be identified); *Gannett v. Cook*, 245 Iowa 750, 61 N.W.2d 703, 707 (Iowa 1953) (holding that a plat is not a deed but is a subdivision of land into lots, streets, and alleys marked upon the earth and represented upon paper). Thus, we find that, generally, a "plat" is a map of a piece of property or an area of land subdivided into lots.

Certainly, the terms "plat" and "survey" are interrelated. Notwithstanding their common usage, the terms are not synonymous. *See State v. Bilbao*, 130 Idaho 500, 943 P.2d 926, 928 (1997) (noting that "records of survey" and "plats" are not synonymous because the recording of a subdivision plat is intended to partition property while a record of survey is not intended to serve as evidence or notice that a landowner is seeking to partition the tract into lots).

▪ With those definitions in mind, we turn to the present case. We find the circuit court erred by not reversing the Appellate Panel and reinstating the order of the ALC. The "clear terms" of the regulation include the words "platted and recorded" with no further definitions or qualifications. Al-

though it would appear to bar Neal's dock application because a survey was made of his property and recorded after the effective date of the regulation, we agree with the ALC that interpreting "platted and recorded" in this manner would lead to absurd results. It would mean that an owner of property that would qualify for a dock permit under this regulation could be divested of this opportunity simply by having a survey performed and recorded at the insistence of a title insurance company when getting a second mortgage or at the urging of a court when a neighbor institutes a boundary dispute. It is apparent from the testimony of Richard Chinnis, drafter of the regulation and the person in charge of interpreting it at OCRM, that the word "plat" as used in the regulation was intended to indicate a subdivision of property, not the mere recordation of a survey. This evidence supports the ALC's determination of the legislative intent of the regulation.

The ALC's determination of the legislative intent is further supported by the General Assembly's decision to amend the regulation. After Neal's hearing in front of the ALC and prior to the Appellate Panel issuing its order in the present case, the regulation was amended to replace the words "platted and recorded after May 23, 1993," with the words "subdivided or resubdivided after May 23, 1993." 23A S.C.Code Ann. Regs. 30–12(A)(1)(o) (Supp.2006). Reference to the General Assembly's subsequent amendment of a statute can be considered clarification of the legislative intent. *Buist v. Huggins,* 367 S.C. 268, 276, 625 S.E.2d 636, 640 (2006) (noting that a subsequent statutory amendment may be interpreted as clarifying statutory intent); *Stuckey v. State Budget & Control Bd.,* 339 S.C. 397, 401, 529 S.E.2d 706, 708 (2000) ("A subsequent statutory amendment may be interpreted as clarifying original legislative intent."); *Cotty v. Yartzeff,* 309 S.C. 259, 262 n. 1, 422 S.E.2d 100, 102 n. 1 (1992) (noting that the court's interpretation of the statute was supported by subsequent amendments to the statute which clarified the legislative intent).

There was substantial evidence to support the ALC's factual findings that the regulation applied only to lots subdivided after the effective date. The subsequent amendment of the regulation to specify its application only to lots "subdivided

and resubdivided" further clarifies the General Assembly's intent and supports the ALC's findings. Despite the fact that the property's water frontage was less than both the seventy-five foot and the fifty foot requirements, the property in question qualified for a dock prior to May 23, 1993, and had not been subdivided into smaller lots after that date. Accordingly, the regulation did not apply to the property and should not bar Neal's dock permit application.

Although the Appellate Panel is free to interpret OCRM's regulations and this interpretation is normally entitled to deference, we find there are compelling reasons to disregard the Appellate Panel's interpretation of the regulation in this case. *South Carolina Coastal Conservation League,* 363 S.C. at 75, 610 S.E.2d at 486 (holding that the Appellate Panel, not OCRM staff, is normally entitled to deference in interpreting its own regulations "unless there is a compelling reason to differ"). The Appellate Panel's order merely states that it was reversing the ALC because it misinterpreted the seventy-five foot requirement for awarding Neal a dock permit. The order does not explain how the ALC made an error of law. *See Brownlee v. South Carolina Dep't of Health & Envtl. Control,* 372 S.C. 119, 128, 641 S.E.2d 45, 49 (Ct.App.2007) (noting that absent an explanation by the Appellate Panel of why it believed the ALJ erred as a matter of law in its interpretation of Regulation 30–12(A)(2)(n) or of why the facts supported the Appellate Panel's interpretation of the regulation, the court could find no error of law meriting reversal of the ALJ).

The ALC correctly found that the word "plat," as used in this regulation, refers to a subdivision of property. The ALC's interpretation of the regulation is supported by substantial evidence and does not amount to an error of law. Thus, we find the circuit court erred in affirming the Appellate Panel's decision to reverse the order of the ALC.

## II. Circuit Court's Findings of Fact

Neal also contends the circuit court applied the wrong standard of review in its order by making its own findings of fact. We agree.

■ As previously discussed, the ALC serves as the finder of fact in environmental permitting cases, and the Appellate Panel's standard of review is whether the ALC's findings are supported by substantial evidence. S.C.Code Ann. § 1-23-600(B) (Supp.2006); *Brown,* 348 S.C. at 520, 560 S.E.2d at 417; *Dorman,* 350 S.C. at 164, 565 S.E.2d at 122. The circuit court has a limited scope of review, and it cannot consider issues that were not raised to and ruled upon by the Appellate Panel. *Kiawah Resort Assocs. v. South Carolina Tax Comm'n,* 318 S.C. 502, 505, 458 S.E.2d 542, 544 (1995) ("As such, the circuit court, like this Court, has a limited scope of review, and cannot ordinarily consider issues that were not raised to and ruled on by the administrative agency.").

The Appellate Panel's order did not make any findings of fact or even reference the findings of fact by the ALC with which it disagreed. The Appellate Panel merely stated that the ALC erred in determining that seventy-five feet of water frontage was not required for Neal to receive a dock. The circuit court's order makes many new "findings of fact" that were not even addressed by the Appellate Panel and were in direct conflict with the facts found by the fact finder, the ALC. The circuit court readily acknowledged in its order that it was deciding some matters not considered by the Appellate Panel.

Neal points to the following examples where the court made new findings: (1) the circuit court found that a plat was never recorded showing the Neal property as one parcel until 1997; (2) the court found that Neal's own expert took a position in the litigation adverse to Neal; and (3) the court found that Neal's dock would be too close to the adjoining landowners' property and would impact the neighbors value, use, and enjoyment. With the possible exception of the first example, these findings directly conflict with the findings by the ALC. Further, the Appellate Panel did not rule on the questions of experts or the impact on adjoining landowners' property. While there may be some evidence in the record to support the circuit court's findings, the court is not entitled to make findings when reviewing an appeal from the Appellate Panel. The court's only considerations are whether: there has been a violation of the statute; the agency has exceeded its authority; the agency made a decision upon an unlawful procedure; the decision was affected by an error of law; the decision was

clearly erroneous in light of the substantial evidence of record; or the Appellate Panel's decision was characterized by an abuse of discretion. S.C.Code Ann. § 1–23–380(A)(6) (2005).

The circuit court's review is limited to matters decided by the Appellate Panel. Because the Appellate Panel only determined the ALC erred in its interpretation of the seventy-five foot requirement found in the regulation, the circuit court's review was limited to this consideration. Since the circuit court went on to make new factual findings based on the record and rule on matters not decided by the Appellate Panel, we find the circuit court erred in exceeding its scope of review.

## CONCLUSION

There is substantial evidence in the record to support the ALC's finding that the regulation did not bar Neal's dock permit application because the property was not subdivided, and the property had been in the current configuration since owned by the McIvers prior to 1940. Thus, the surveys conducted thereafter did not amount to having the property "platted and recorded" under the regulation. Further, the circuit court erred in reviewing the record and making new findings of fact on matters not decided by the Appellate Panel. We find the Appellate Panel erred in reversing the ALC, and the circuit court erred in affirming. Therefore, the order of the circuit court upholding the Appellate Panel's order is

**REVERSED.**

WILLIAMS, J., concurs.

GOOLSBY, J., dissenting in a separate opinion.

GOOLSBY, J. (dissenting):

I respectfully dissent and would uphold, as did the circuit court, the reversal by the Appellate Panel of the order of the Administrative Law Court that affirmed the issuance by the Office of Ocean and Coastal Resource Management of a dock permit to the respondent David Neal. The relevant part of the regulation at issue provides, "For lots platted and recorded after May 23, 1993, before a dock will be permitted, a lot must

have 75 feet of water frontage along the marsh edge...." [7]
S.C.Code Ann. Regs. 30–12(A)(2)(*o*) (Supp.2001). Inasmuch as
Neal possesses only five feet of frontage and platted and
recorded his lot in 1997, the plain language of the regulation
applies and serves to proscribe issuance of the dock permit
that he seeks.

---

7. As the majority opinion points out, this regulation has been amended
several times. *See supra* note 2.