665 S.E.2d 656

**Macksey JOHNSON, Employee, Appellant,**

v.

**BEAUTY UNLIMITED LANDSCAPE CO., Employer, and
Selective Way Insurance Co., Carrier, Respondents.**

No. 4414.

Court of Appeals of South Carolina.

Submitted June 1, 2008.

Decided June 17, 2008.

Rehearing Denied Aug. 25, 2008.

---

404

Steven Eric Goldberg, of Charleston, for Appellant.

Benjamin M. Renfrow, of Greenville, for Respondents.

CURETON, A. J.:

In this action seeking workers' compensation benefits for a work-related eye injury, Macksey Johnson appeals the circuit court's order affirming an award of benefits for an 8.5% loss of vision. We affirm.[1]

## FACTS

On May 31, 2001, a tree limb struck Macksey Johnson's right eye while he was working for Beauty Unlimited Landscaping (Beauty Unlimited). As a result of that injury, Johnson developed a traumatic cataract in that eye. Dr. Karen Ullian, a general ophthalmologist, surgically removed the cataract and implanted an artificial lens. Johnson returned to work in September of 2001. One month later, Dr. Ullian recorded that the intraocular implant had restored Johnson's vision in his right eye to 20/20.

Dr. Ullian testified in March of 2005 Johnson had 20/30 vision in his right eye, but glasses corrected this vision to 20/20. When Johnson complained of seeing "floaters" in February of 2005, Dr. Ullian examined him. She determined the floating visual disruptions were benign and would eventually go away. Dr. Ullian considered the intraocular implant to be a corrective measure comparable to glasses or contact lenses. However, according to Dr. Ullian, the implant is a permanent solution to Johnson's injury. She testified the only maintenance the implant would ever require was an annual eye exam. Dr. Ullian confidently stated, "He will never need an implant replacement[;] that implant is perfect." Moreover, as a result of the implant, Dr. Ullian testified Johnson "ha[d] no disability."

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Johnson filed a Form 50 with the Workers' Compensation Commission (Commission) seeking compensation for 100% loss of use of his right eye.[2] The single commissioner found Johnson's eye injury was compensable and ordered Beauty Unlimited to pay all approved medical bills related to treatment for this injury through February 16, 2005, the date Johnson reached maximum medical improvement. However, the single commissioner declined to characterize the intraocular implant as a "corrective lens" and awarded Johnson only an 18.5% permanent partial disability for the loss of vision in his right eye. Both parties appealed.

The appellate panel affirmed the single commissioner with some modifications. The appellate panel reduced the 18.5% loss of vision to 8.5% based upon correction of Johnson's 20/30 vision to 20/20.[3] Furthermore, the appellate panel held the word "use" in the applicable regulation must necessarily indicate a removable corrective appliance like glasses or contact lenses. The circuit court affirmed the appellate panel. This appeal followed.

## STANDARD OF REVIEW

In reviewing workers' compensation decisions, the appellate court ascertains "whether the circuit court properly determined whether the appellate panel's findings of fact are supported by substantial evidence in the record and whether the panel's decision is affected by an error of law." *Baxter v. Martin Bros., Inc.,* 368 S.C. 510, 513, 630 S.E.2d 42, 43 (2006) (citations omitted); *see also* S.C.Code Ann. § 1–23–380(A)(5) (Supp.2007). Generally, " '[c]ourts defer to the relevant administrative agency's decisions with respect to its own regulations unless there is a compelling reason to differ.' " *Neal v. Brown,* 374 S.C. 641, 649, 649 S.E.2d 164, 168 (Ct.App.2007), *cert. granted* May 30, 2008 (quoting *S.C. Coastal Conservation League v. S.C. Dep't of Health & Envtl. Control,* 363 S.C. 67, 75, 610 S.E.2d 482, 486 (2005)).

---

**2.** Johnson subsequently developed a cataract in his left eye, but Dr. Ullian believed it was unrelated to the right-eye injury. Johnson made no claim for his left eye.

**3.** According to the Snellen Notation table, 20/30 vision corresponds with an 8.5% loss of vision. 25A S.C.Code Ann. Regs. 67–1105 (1990).

If a statute's terms are clear, the court must apply the terms according to their literal meaning. "An appellate court cannot construe a statute without regard to its plain meaning and may not resort to a forced interpretation in an attempt to expand or limit the scope of a statute." While the appellate court usually defers to the [a]ppellate [p]anel's construction of its own regulation, where the [a]ppellate [p]anel's interpretation is contrary to the plain language of the regulation, the court will reject its interpretation.

*Id.* at 650, 649 S.E.2d at 168 (citing *Brown v. S.C. Dep't of Health & Envtl. Control*, 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002)) (internal citations omitted).

## LAW/ANALYSIS

### I. Regulation 67–1105

Johnson first argues the circuit court erred in interpreting regulation 67–1105 [4] to exclude compensation for the 100% loss of vision in his eye. We disagree.

A disability is an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." S.C.Code Ann. § 42–1–120 (1985). An employer must pay an injured employee compensation for partial disability. S.C.Code Ann. § 42–9–20 to –30 (1985 & Supp.2007). The loss of an eye results in a compensable partial disability. S.C.Code Ann. § 42–9–30(18) (Supp.2007). "Loss of vision is based on reading without the use of corrective lenses." S.C.Code Regs. § 67–1105 (1989).

The circuit court properly determined the appellate panel committed no error of law. Under the Workers' Compensation Act (Act), a work-related injury is compensable above and beyond the cost of treatment to the extent it renders the employee disabled. *See* §§ 42–9–20 to –30. From this premise it follows that when treatment restores the employee to his pre-injury condition so he no longer requires assistive devices to compensate for his loss, the employee is no longer disabled. Only a disabled employee is eligible for additional workers' compensation benefits. In Dr. Ullian's opinion, Johnson was no longer disabled after the implant surgery. However, he did wear glasses to correct the 20/30

---

4. 25A S.C.Code Ann. Regs. 67–1105 (1990).

vision in his right eye. No other medical testimony was offered. In light of these facts, the appellate panel affirmed an award of disability benefits appropriate to Johnson's 20/30 vision. Consequently, we find the circuit court did not err in affirming the appellate panel's award.

■ We see no compelling reason to depart from the appellate panel's ruling that the term "corrective lenses" does not include implanted lenses.[5] While we agree with Dr. Ullian that an intraocular implant is corrective in nature, we find it is not a "corrective lens" as contemplated by regulation 67–1105. In affirming the appellate panel, the circuit court reasoned:

> Clearly, there is a distinct difference between a removable glass or plastic lens, which must be replaced or removed periodically, and a complex invasive surgery that permanently restructures and repairs one's vision. An intraocular lens implant ... is an intricate surgery that rebuilds the inner-workings of the eye, whereby the patient is able to permanently recover his or her vision to a degree often greater than that prior to injury.

We find an intraocular implant differs significantly from both glasses and contact lenses in terms of the permanence of the solution and the requirement of future maintenance. With regard to permanence, a person may wear or remove glasses or contact lenses at will. However, an intraocular implant resides wholly within the patient's eye and is inaccessible without surgery. Furthermore, according to Dr. Ullian, the intraocular implant will last the rest of Johnson's life. In light of these facts, we do not believe Johnson's current "loss of vision" without the use of his implanted lens could be determined without surgically removing his implant. *See* S.C.Code Regs. § 67–1105 (1989). With regard to future maintenance, common knowledge dictates that both glasses and contact lenses frequently require replacement because they become lost, break, or, more commonly in the case of contact lenses, wear out. Periodic vision examinations and new prescriptions render old glasses and contact lenses obsolete. In addition, as

---

5. Both parties to this appeal have surveyed the rather even split on this issue in decisions from other jurisdictions. However, we are not compelled to weigh the decisions of other jurisdictions when we agree with the well-reasoned ruling of the Commission. *See Neal v. Brown*, 374 S.C. 641, 649, 649 S.E.2d 164, 168 (Ct.App.2007), *cert. granted* May 30, 2008.

Dr. Ullian observed, contact lenses expose the wearer to the risk of eye infections.

By contrast, Johnson's implant will never need replacement and does not regularly expose his eye to infections. His vision without the use of contact lenses or eyeglasses has been measured at 20/30. He need only wear glasses to perfect his vision, which is already quite good. However, Johnson received an award of workers' compensation benefits for the percentage of his vision the glasses restore. Because we concur with the appellate panel's reasoning in distinguishing an intraocular implant from the "corrective lenses" contemplated in the regulation, we defer to the agency's expertise and ruling in this matter.

## II. Interpretation of Regulation

Johnson next argues the circuit court erred in failing to interpret the regulation in the light most favorable to the claimant. We disagree.

"Workers' compensation laws were intended by the Legislature to relieve workers of the uncertainties of a trial for damages by providing sure, swift recovery for workplace injuries regardless of fault." *Peay v. U.S. Silica Co.*, 313 S.C. 91, 94, 437 S.E.2d 64, 65 (1993). On appeal from a decision of the appellate panel, a court must "review the evidence, and state the facts and the reasonable inferences therefrom, in the light most favorable to claimant." *Ford v. Allied Chem. Corp.*, 252 S.C. 561, 564, 167 S.E.2d 564, 565 (1969). "Any reasonable doubts as to construction of the Act should be resolved in favor of coverage." *Mauldin v. Dyna–Color/Jack Rabbit*, 308 S.C. 18, 22, 416 S.E.2d 639, 641 (1992).

The circuit court did not err in affirming the appellate panel. The role of the courts is to evaluate the evidence "in the light most favorable to claimant" to ensure injured employees do not bear the cost of disabilities resulting from work-related hazards. This role does not empower the courts to employ semantics to stretch the Act or its attendant regulations and extend benefits to persons who no longer suffer a disability. *See Santee Cooper Resort, Inc. v. S.C. Pub. Serv. Comm'n*, 298 S.C. 179, 184, 379 S.E.2d 119, 122 (1989). The Commission found Johnson suffered a work-related disability and ordered his employer to fund his medical

treatment. No evidence suggests his employer failed to pay for his treatment. But for a small diminution in vision, the medical treatment he received eliminated the disability. Therefore, we find Johnson has recuperated without bearing the cost of his recovery. Permitting him to recover simultaneously for wholly successful medical treatment and for a 100% disability that no longer exists would create an unreasonable windfall for Johnson. The Act has served its purpose by ensuring coverage for Johnson's "sure, swift recovery" from injury and by providing for his future vision-care needs in accordance with the actual diminution in vision he has experienced. *Peay,* 313 S.C. at 95, 437 S.E.2d at 65. Accordingly, we see no error.

## CONCLUSION

We find no error of law in the appellate panel's decision to exclude an intraocular implant from the term "corrective lenses" in regulation 67–1105. For this reason, the circuit court did not err in affirming the appellate panel's decision. Furthermore, we find the appellate panel committed no error in evaluating the evidence or interpreting the law in this matter, and thus, its decision is supported by substantial evidence. Consequently, the circuit court did not err in affirming the appellate panel's decision. Accordingly, the order of the circuit court in this matter is

**AFFIRMED.**

SHORT and KONDUROS, JJ., concur.