680 S.E.2d 784

**J. Rutledge YOUNG, Jr., Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Boyce and Carol Miller, Respondents.**

**No. 4555.**

Court of Appeals of South Carolina.

Heard Feb. 18, 2009.

Decided June 4, 2009.

Stephen L. Brown, Esquire, J. Rutledge Young, Jr., of Charleston, for Appellant.

Carlisle Roberts, Jr., of Columbia, Cotton C. Harness, III, of Mt. Pleasant, Davis A. Whitfield–Cargile and Elizabeth Applegate Dieck, both of Charleston, for Respondents.

THOMAS, J.:

This is a dock permit appeal. J. Rutledge Young contends the Coastal Zone Management Appellate Panel (CZMAP) erred in accepting and adopting the Administrative Law Judge's findings of fact and conclusions of law. Specifically, Young alleges CZMAP, in upholding the disputed permit, erred in (1) declining to find the Administrative Law Court (ALC) made an error of law in deciding the case under incorrect regulations; (2) declining to find the South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management (OCRM) abused its discretion in failing to exercise discretion when issuing the disputed permit; and (3) declining to find OCRM abused its discretion when not considering the cumulative effect of a boatlift included in the permit application. We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 5, 2005, Samuel M. Riddle, III, submitted an application to OCRM to construct a private recreational dock in Church Creek originating from Lot 11–D on Lonnie Taylor Lane in Wadmalaw Island. According to the application, the proposed project was to include a 10–foot by 15–foot four-pile boatlift. Public notice of the permit application was published on April 21, 2005.

On May 3, 2005, Young, who owns property two lots away from Lot 11–D, notified OCRM in writing of his objection to the proposed permit. Among the objections to the permit was Young's complaint that the proposed boatlift would interfere with his view of Church Creek. In support of his position, Young asserted there were only five docks on the Wadmalaw side of Church Creek, none of which had mechanical boatlifts. Young also contended a drive-on floating dock was an available alternative that would cause less interference with his view.

OCRM issued a conditional dock permit on June 10, 2005, and validated the permit on June 15, 2005. The conditional permit noted that "[a] 10' by 15' four-pile boatlift will be located on the downstream side of the pierhead." Boyce and Carol Miller bought Lot 11–D on June 21, 2005, and were later substituted for Riddle as respondents of record in this case.

The pertinent regulation in effect when the permit was issued gave OCRM the right to consider allowing an applicant to have a boat storage dock in lieu of a boatlift; however, on June 24, 2005, it was amended to give the permit applicant the option of a boatlift or a storage dock.[1]

On June 12, 2006, the ALC held a hearing in the matter. By order dated August 21, 2006, the ALC upheld OCRM's decision to issue the permit for the dock with the boatlift.

On August 30, 2006, Young appealed the ALC decision to CZMAP. CZMAP heard oral arguments in the matter on June 22, 2007, and on August 17, 2007, affirmed the ALC. This appeal followed.

## ISSUES

I. Did CZMAP err in declining to hold the ALC decided this case using regulations that were not in effect when OCRM considered the permit application?

---

1. The prior regulation provided in pertinent part that "[b]oat storage docks will be considered on a case-by-case basis and may be permitted in lieu of elevated boatlifts." 23A S.C.Code Ann. Regs. 30–12(A)(2)(q)(viii) (Supp.2003). Under the 2005 changes, applicants were granted the right "to choose either one boat lift or one boat storage dock with an impact area not to exceed 160 square feet that will not count against the total allowable dock square footage." 23A S.C.Code Ann. Regs. 30–12(A)(2)(c) (Supp.2005).

II. Did CZMAP err in declining to hold OCRM abused its discretion in failing to exercise discretion when issuing the disputed permit?

III. Did CZMAP err declining to hold OCRM abused its discretion in not considering the cumulative effect of the proposed boatlift as required by its own regulation?

## STANDARD OF REVIEW

"In contested permitting cases, the ALC serves as the finder of fact." *Neal v. Brown,* 374 S.C. 641, 648, 649 S.E.2d 164, 167 (Ct.App.2007), *cert. granted* May 30, 2008. On appeal to CZMAP, the standard of review is whether substantial evidence supports the ALC's findings. *Id.* "A proceeding before the ALJ is in the nature of a de novo hearing, including the presentation of evidence and testimony, rather than an appellate proceeding." *Brownlee v. S.C. Dep't of Health & Env'tl Control,* 372 S.C. 119, 125, 641 S.E.2d 45, 48 (Ct.App. 2007), *rev'd on other grounds* 382 S.C. 129, 676 S.E.2d 116 (2009).

Judicial review of CZMAP's decision by this Court is governed by the prior version of section 1–23–380(A)(6) of the South Carolina Code, under which the court "may reverse or modify the decision if the substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are

(a) in violation of constitutional or statutory provisions;

. . .

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion . . . ."

S.C.Code Ann. § 1–23–380(a)(6) (2005). "An abuse of discretion occurs when a ruling is based on an error of law or a factual conclusion without evidentiary support." *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.,* 372 S.C. 295, 300, 641 S.E.2d 903, 907 (2007).

## LAW/ANALYSIS

### I. Applicable Regulations

Young first argues CZMAP should have reversed the order issued by the ALC because the ALC based its decision on regulations that were not in effect when the permit application came before OCRM. We hold this issue was not preserved for appellate review.

■ A court has a limited scope of review of the final decisions of administrative agencies and cannot ordinarily consider issues that were not raised to and ruled on by the agency from which an appeal is taken. *See Kiawah Resort Assocs. v. S.C. Tax Comm'n,* 318 S.C. 502, 505, 458 S.E.2d 542, 544 (1995) (applying this rule to judicial review by the circuit court of an administrative agency decision). "[E]very ground of appeal ought to be distinctly stated that the Court may at once see the point which it is called upon to decide without having to 'grope in the dark' to ascertain the precise point at issue." *Boyer v. Loftin–Woodard, Inc.,* 247 S.C. 167, 170–71, 146 S.E.2d 606, 607 (1966); *see also Home Med. Sys. v. S.C. Dep't of Revenue,* 382 S.C. 556, 562, 677 S.E.2d 582, 586 (2009) (emphasizing that issue preservation is required in administrative appeals and holding "Rule 59(e), SCRCP, motions are permitted in ALC proceedings").

■ In his brief to CZMAP, Young merely referenced the regulation he now asserts was applicable to this controversy and never specifically asserted error in the ALC's failure to follow the correct version in reaching its decision. Moreover, as he admitted in his brief to this Court, the reference contained a typographical error. Even if, as Young asserted during oral argument, the correct citation to the regulation should have been evident to those familiar with this case, we do not agree with Young that such a passing reference sufficed to bring this issue to the attention of CZMAP. *Cf. Al–Shabazz v. State,* 338 S.C. 354, 379, 527 S.E.2d 742, 755 (2000) (concerning a final decision of an administrative law judge in an appeal from the final decision of the Department of Corrections wherein the supreme court stated "the inmate's petition to the circuit court must distinctly and specifically direct the court's attention to the errors or abuses allegedly committed

by the ALC. . . . A mere expression of dissatisfaction with the ruling is not sufficient.").

## II. OCRM's Alleged Failure to Exercise Discretion

Young next asserts the order of the ALC should have been reversed on the ground that OCRM failed to exercise its statutorily required discretion when it approved the dock permit application. Specifically, Young contends OCRM failed to consider (1) the individual merits of the permit application, (2) certain legislative declaration of findings and state policy, and (3) the extent to which the proposed boatlift could affect the value and enjoyment of adjacent owners such as himself.[2] We disagree.

█ Under section 48–39–150 of the South Carolina Code, OCRM must consider certain criteria in deciding whether to approve or deny a permit. S.C.Code Ann. § 48–39–150 (1987 & Supp.2006). Section 48–39–150 references the three factors that Young asserts were not given adequate attention by OCRM when it approved the Millers' dock permit; however, based on our view of the record, we hold Young did not meet his burden to show OCRM disregarded the relevant statutory prerequisites when it considered the Millers' application. *See Hoffman v. Greenville County*, 242 S.C. 34, 39, 129 S.E.2d 757, 760 (1963) ("The burden of proof is upon the party who by the pleadings has the affirmative on the issue.").

Young maintains OCRM's decision was motivated by the presence of other boatlifts in the vicinity and cites evidence suggesting OCRM personnel operated under the belief that authorization of boatlifts meeting certain size requirements was mandatory, including a handwritten notation in the permitting document indicating the boat lift had to be authorized because its dimensions did not count against the total square footage of the dock. We have found nothing in the record, however, identifying who made this notation or suggesting that OCRM's decision to allow the boatlift was based solely on the size of the boatlift or the recognition that there were other boatlifts in the area. To the contrary, Curtis Joyner, OCRM's Manager of Critical Area Permitting, testified that in addition

---

2. The ALC determined that although Young's property was not contiguous to the Millers' property, Young was still an adjacent owner.

to boatlifts, the area in question already had pier heads and floating docks. He further stated the proposed dock was a very reasonably sized dock compared to other docks in the area and fitted within the general character of the area. Although Joyner candidly admitted that he would have been influenced by what boat storage structures were already present in the area, he had in the past modified a permit based on view impact.

■ Young next complains that, as required by section 48–39–150(A) of the South Carolina Code, OCRM did not base its determination on the policies stated in sections 48–39–20 and 48–39–30.[3] We disagree. Young's argument on this point appears to focus on Joyner's acknowledgement that he never distinguished Wadmalaw Island from other more developed areas when considering the permit application. This admission, however, does not nullify the fact that OCRM, in determining whether or not to allow the proposed dock, considered the presence of comparable structures in the area as well as whether the dock satisfied all statutory and regulatory requirements. Moreover, as Joyner testified, heightened protection for the area would be available through the creation of a special area management plan, zoning, or enactment of appropriate local ordinances.

■ We also reject Young's argument that OCRM failed to consider the extent to which the proposed boatlift could affect the value and enjoyment of adjacent owners such as himself. In support of this argument, Young cites a recent case from the supreme court for the proposition that recreational pursuits conferred standing on the petitioner to challenge a permit issued by OCRM for "beach sand scraping" from a public intertidal beach. *See Smiley v. S.C. Dep't of Health &*

---

3. In section 48–39–20 of the South Carolina Code, the South Carolina General Assembly enumerated various findings concerning the importance of developing a statewide management program to regulate development in the coastal zone "in light of competing demands and the urgent need to protect and to give high priority to natural systems in the coastal zone while balancing economic interests." S.C.Code Ann. § 48–39–20(F) (1987 & Supp.2006). In section 48–39–30, the General Assembly declared "the basic state policy ... to protect the quality of the coastal environment and to promote the economic and social improvement of the coastal zone and of all the people of the State." *Id.* § 48–39–30(A).

*Envtl. Control,* 374 S.C. 326, 331–33, 649 S.E.2d 31, 34 (2007). In the present case, however, the issue not whether aesthetic concerns and recreational activities are appropriate factors to consider in evaluating the propriety of the proposed boat storage dock but whether the issues Young raised were in fact given adequate attention during the permitting process. We hold OCRM gave sufficient consideration to Young's reasons opposing the boatlift.

Here, Young's interests in view alone are limited under South Carolina law. *See Hill v. Beach Co.,* 279 S.C. 313, 315, 306 S.E.2d 604, 605 (1983) (noting prescriptive rights to ocean views, breezes, light, and air do not exist in South Carolina). Furthermore, there is a regulation minimizing the visual impact of boatlifts by prohibiting their enclosure. *See* S.C.Code Ann. Regs. 30–12(A)(2)(e)(iii) (Supp.2005).[4] We therefore agree with DHEC that OCRM gave adequate attention to Young's interests and rights when it balanced the factors for and against the permit.

### III. OCRM's Evaluation of Cumulative Effects

Finally, Young argues OCRM's alleged failure to consider the cumulative effects of the proposed boatlift amounted to a violation of its own administrative regulation. We disagree.

In deciding permit applications, OCRM must be guided by "[t]he extent to which long-range, cumulative effects of the project may result within the context of other possible development and the general character of the area." 23A S.C.Code Ann. Regs. 30–11(C)(1) (Supp.2003).[5]

To support his assertion that OCRM failed to consider the long-range, cumulative effects of the proposed boatlift within the context of other possible development, Young points to (1) Joyner's testimony that all owners of adjacent and nearby properties would be granted boatlifts if they applied for them; (2) Joyner's acknowledgment that a proliferation of boatlifts in a reasonably small area could alter the visual aspects of the area; (3) evidence that OCRM personnel felt compelled to

---

4. This regulation was still in effect in 2008. *See* S.C.Code Ann. Regs. 30–12(A)(2)(e)(iii) (Supp.2008).

5. This regulation has not changed since 2003.

allow all applications for boatlifts so long as the boatlifts were of proper dimensions; and (4) the absence of any notation or evidence in OCRM's file regarding the cumulative effect of a boatlift in the area. This evidence, however, does not necessarily warrant a finding that inadequate attention was given to the cumulative effects of the proposed boatlift within the context of other possible development and the general character of the area. As noted by the ALC, the area surrounding Young's property is not a "pristine wilderness, unmarked by docks and piers, but is a creek familiar with development, including docks with boatlifts and other boat storage methods." There is no evidence that any negative impact of the proposed boatlift would be any greater than that of other boat storage structures. Given these considerations, we hold that Young has not carried his burden to show OCRM violated Regulation 30–11(C)(1).

## CONCLUSION

For the foregoing reasons, we affirm CZMAP's decision to adopt the ALC's order upholding the issuance of the Millers' dock permit.

**AFFIRMED.**

HUFF and LOCKEMY, JJ., concur.