THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Kathleen Ragin
 Bennett, Respondent,
 v.
 Cracker Barrel
 Old Country Store, Employer, Gallagher Bassett, Carrier, Appellants.
 
 
 

Appeal From Clarendon County
 George C. James, Jr., Circuit Court Judge

Unpublished Opinion No.  2009-UP-392
Heard June 10, 2009  Filed July 16, 2009

REVERSED

 
 
 
 Darryl D. Smalls, of Columbia, for Appellants. 
 Richard W. Simmons, II, of Columbia, for Respondent.
 
 
 

PER CURIAM:  After
 suffering a shoulder injury at work, Kathleen Ragin Bennett sought workers'
 compensation benefits from her employer, Cracker Barrel Old Country Store, and
 its insurance carrier, Gallagher Bassett (collectively "Cracker
 Barrel").  The single commissioner and the Appellate Panel of the Workers'
 Compensation Commission (Appellate Panel) awarded her benefits based upon her
 hourly wage and reported tips, and the circuit court reversed.  Cracker Barrel
 appeals from the circuit court's order requiring recalculation of Bennett's
 average weekly wage and compensation rate.  We reverse and reinstate the order
 of the Appellate Panel.
FACTS
Bennett
 worked an average of thirty-two hours a week as a server at Cracker Barrel. 
 She was compensated at a rate of $2.41 per hour plus tips.  As was customary
 for wait staff, Bennett reported eight percent of her sales as tips to Cracker
 Barrel.  These reported tips placed Bennett's earnings above the federally
 mandated hourly minimum wage.  She did not report the actual amount of her tip
 earnings, which she and Cracker Barrel agreed exceeded eight percent of her sales,
 to Cracker Barrel or to the Internal Revenue Service.  
On
 November 18, 2004, Bennett injured her left shoulder while lifting a large urn
 of tea at work.  Despite the injury, Bennett worked for two additional weeks
 before seeing a doctor, and her shoulder ultimately required surgery.  Bennett
 filed an application for workers' compensation benefits.  The single
 commissioner awarded Bennett medical and temporary total disability benefits
 using an average weekly wage based only upon the wage and tip earnings she
 reported to Cracker Barrel.  The Appellate Panel affirmed.  Bennett appealed
 the calculation of her average weekly wage to the circuit court, which reversed
 and remanded.  Cracker Barrel appealed to this court.
STANDARD OF REVIEW
In
 reviewing workers' compensation decisions, the appellate court ascertains "whether
 the circuit court properly determined whether the [A]ppellate [P]anel's
 findings of fact are supported by substantial evidence in the record and
 whether the [P]anel's decision is affected by an error of law."  Baxter
 v. Martin Bros., Inc., 368 S.C. 510, 513, 630 S.E.2d 42, 43 (2006); see
 also S.C. Code Ann. § 1-23-380(5) (Supp. 2008).  Generally, "'[c]ourts
 defer to the relevant administrative agency's decisions with respect to its own
 regulations unless there is a compelling reason to differ.'"  Neal v.
 Brown, 374 S.C. 641, 649, 649 S.E.2d 164, 168 (Ct. App. 2007), cert. granted May 30, 2008 (quoting S.C. Coastal Conservation League v.
 S.C. Dep't of Health & Envtl. Control, 363 S.C. 67, 75, 610 S.E.2d 482,
 486 (2005)).  
LAW/ANALYSIS
Cracker
 Barrel argues the circuit court erred in remanding this matter to the Appellate
 Panel for recalculation of Bennett's average weekly wage.  We agree.  
The compensation rate for a total disability award is equal to
 sixty-six-and-two-thirds percent of the claimant's average weekly wage.  S.C.
 Code Ann. § 42-9-10(A) (Supp. 2008).  A claimant's average weekly wage
 means:

 [T]he earnings of the injured employee in the employment in which
 he was working at the time of the injury during the period of fifty-two weeks
 immediately preceding the date of the injury . . . .  "Average weekly wage"
 must be calculated by taking the total wages paid for the last four quarters
 immediately preceding the quarter in which the injury occurred as reported on
 the Employment Security Commission's Employer Contribution Reports divided by
 fifty-two or by the actual number of weeks for which wages were paid, whichever
 is less. . . . .
 When for exceptional reasons the foregoing would be unfair, either
 to the employer or employee, such other method of computing average weekly
 wages may be resorted to as will most nearly approximate the amount which the
 injured employee would be earning were it not for the injury. 
 Whenever allowances of any character made to an employee in lieu
 of wages are a specified part of a wage contract they are deemed a part of his
 earnings.

S.C. Code Ann. §
 42-1-40 (Supp. 2008).  If the claimant and the employer are unable to agree on
 a fair rate of temporary compensation, and subsequently if the claimant
 disagrees with the Workers' Compensation Commission's administrative
 recommendation, the claimant may file a Form 50 requesting a hearing.  25A Reg.
 67-1603(C) (Supp. 2008).  In these circumstances, the average weekly wage and
 compensation rate are issues to be determined at the hearing.  25A Reg. 67-606
 (Supp. 2008).  
Here, Cracker Barrel bore the initial burden of providing wage
 information.  The information it provided consisted of Bennett's hourly wage
 plus the tips she reported.  However, no evidence indicates anyone other than
 Bennett ever possessed information about her tip earnings beyond what she
 voluntarily reported.  The record reflects Cracker Barrel's payroll records
 included a notation that "servers must report one hundred percent (100%)
 of all tips received."  Despite this notation and her assertion she
 consistently earned more than she reported, Bennett elected to report to
 Cracker Barrel an amount equal to eight percent of her sales, the minimum
 amount that would enable her to pass her employer's daily audit.[1]  Aside from
 Bennett's reports, we see no indication Cracker Barrel had any means of
 ascertaining her actual tip earnings.  
By filing a Form 50 challenging Cracker Barrel's calculation of her
 average weekly wage, Bennett invoked an "exceptional reasons"
 analysis of her earnings.  See § 42-1-40; Reg. 67-1603(C).  Subsequently,
 Bennett presented testimonial evidence supporting her claim of unreported tip
 earnings to the single commissioner, who then awarded Bennett benefits.  The
 Appellate Panel adopted the order of the single commissioner and therefore all
 the findings of fact and conclusions of law therein.  In doing so, the
 Appellate Panel concluded the law required that "[e]arnings for a tipped
 employee such as a waitress include hourly wages and tips."  This
 conclusion did not exclude any unreported tip earnings.  Rather, the order approved
 use of the exceptional reasons analysis and consideration of any wage records Bennett
 submitted into evidence.  As a result, we find the decision of the Appellate
 Panel included consideration of all tip earnings, reported and unreported, as
 well as an implicit finding the evidence of unreported tips Bennett presented was
 not credible.  Consequently, the circuit court erred in remanding this matter
 for recalculation.  
CONCLUSION
We
 find the decision of the Appellate Panel properly included consideration of all
 tip earnings.  Accordingly, the order of the circuit court remanding this
 matter for recalculation is reversed, and the order of the Appellate Panel is
 reinstated.
REVERSED.
THOMAS
 and KONDUROS, JJ., and CURETON, A.J., concur.

[1] Bennett notes in her brief that it is common in the
 restaurant industry for employers to require servers to report eight percent of
 their sales as tips.  It appears Cracker Barrel enforced this requirement by
 conducting a daily audit that compared each server's sales with her reported
 tips.  A server who reported tips equaling less than eight percent of her total
 sales was required to make up the deficit in the tips she reported the next
 day.